```
IN THE UNITED STATES DISTRICT COURT
   FOR THE MIDDLE DISTRICT OF GEORGIA
              MACON DIVISION
```

| | |
|---|---|
| BOBBY N. DUMAS, | : |
| Plaintiff | : |
| VS. | : |
| | :  5 : 06-CV-350 (CAR) |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

**RECOMMENDATION**

The plaintiff herein filed this Social Security appeal on December 2, 2006, challenging the Commissioner's final decision denying his application for disability benefits. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted.

*Background*

The plaintiff filed his application for Supplemental Security Income benefits in January 2003, alleging disability since January 11, 1999, due to disorders of the back and heart disease. His application was denied initially and upon reconsideration. Following two (2) hearings, on March 2, 2005, and July 6, 2005, the ALJ determined that the plaintiff was not disabled. The Appeals Council denied review and the plaintiff then filed this appeal, arguing that the ALJ erred in finding that his cardiac condition was not severe, failed to accord the proper weight to the opinion of disability issued by his treating physician, and that new evidence merits a remand of this matter for further consideration.

At the time of the hearings before the ALJ, the plaintiff was thirty-nine (39) years of age with a "limited" seventh-grade education. Plaintiff had worked sporadically as a cook,

carpenter, and house painter, although the vocational expert testified that the plaintiff had no vocationally relevant past work.  During the hearings before the ALJ, the plaintiff amended his onset date to January 16, 2003.

*Standard of review*

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).  The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Richardson v. Perales, 402 U.S. 389, 401 (1971).  In reviewing the ALJ's decision for support by substantial evidence, this court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."  Bloodsworth, 703 F.2d at 1239.  "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  Cornelius, 936 F.2d at 1145-1146.

*New evidence*

The plaintiff argues that new evidence mandates a remand of this matter for further consideration.  This new evidence consists of a CT scan of the plaintiff's abdomen dated

2

December 14, 2005, which according to the plaintiff shows several calcifications within the central portion of the right kidney and a lower pole cystic lesion of the left kidney. Pursuant to Sentence Six of 42 U.S.C. § 405(g), the court is empowered to remand a case to the Commissioner for consideration of material, new evidence if the plaintiff can demonstrate good cause as to why it was not previously submitted. Cherry v. Heckler, 760 F.2d 1186 (11th Cir. 1985). In order to obtain a remand under Sentence Six, the plaintiff must establish that: 1) there is new, noncumulative evidence; 2) the evidence is material in that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level. Caulder v. Bowen, 791 F.2d 872, 879 (11th Cir. 1986).

As the Commissioner argues, there is no reasonable possibility that the CT scan would have changed the administrative result below. The findings from the CT scan indicate that the lesion was possibly a "benign process", in light of the stability of the condition since April 2004, and suggested that only a follow-up scan in 5 - 6 months was needed to chart its condition. "Otherwise, the study [was] unremarkable", except for "possibly" several non-obstructing calculi and small cysts. R. at 520. Such findings do not present a reasonable possibility of changing the administrative result below.

*Severity*

Under the regulations, the Commissioner evaluates a disability claim by means of a five step sequential evaluation process. 20 C.F.R. § 404.1520. In Step One, the Commissioner determines whether the claimant is working. In Step Two, the Commissioner determines whether a claimant suffers from a severe impairment which significantly limits his ability to

3

carry out basic work activities.  At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations.  At Step Four, the Commissioner determines whether the claimant's residual functional capacity will allow a return to past relevant work.  Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

The plaintiff initially argues that the ALJ erred in finding that his cardiac condition was not severe, thereby failing to consider all of plaintiff's impairments in combination.  At Step two of the sequential evaluation process, the ALJ determines whether a claimant suffers from a severe impairment which significantly limits his ability to carry out basic work activities. "Step two is a threshold inquiry.  It allows only claims based on the most trivial impairments to be rejected.  The claimant's burden at step two is mild.  An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.  Claimant need show only that [his] impairment is not so slight and its effect is not so minimal." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).  . In McCruter v. Bowen, 791 F.2d 1544 (11th Cir. 1986), the Eleventh Circuit clarified that "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." Id. at 1547.    The ALJ herein found that the claimant suffered from severe impairments including Scheurmann's Disease, degenerative disc of the lumbar spine, and a bulging disc at the L4-5 level.  In regard to plaintiff's allegations of heart disease as a severe and disabling

4

impairment, the ALJ determined that

> [a] review of the record indicates the claimant had a mild heart attack in January 2003, and subsequently underwent percutaneous transluminal coronary angioplasty and stent placement. According to the February 9, 2004, treatment note from the Medical Center of Central Georgia, the claimant had an ejection fraction of 60%, "only minor impairment of previously stented RCA (right coronary artery)". I find an ejection fraction of 60% is evidence of a healthy and well-functioning heart and the claimant's coronary artery disease does not have more than a minimal effect on his ability to perform work-related activities.

R. at 20.

The medical evidence herein clearly shows that the plaintiff suffered a heart attack and underwent angioplasty and stent replacement in 2003. As pointed out by the Commissioner, Dr. Dallas Von Hessler examined the plaintiff in May 2003, and found that the only limitation on plaintiff's ability to work at that time was his ejection fraction findings of 35%. R. at 318. However, the medical evidence shows that this measure of plaintiff's cardiac condition steadily improved thereafter, and in February 2004, plaintiff had a normal ejection fraction finding of 60%. R. at 490. Thus, as the ALJ found, there was no indication in the evidence before him that the plaintiff continued to suffer more than a minimal effect on his ability to perform work-related activities due to his heart condition. Additionally, the ALJ clearly considered all of plaintiff's impairments in combination, as he so stated that plaintiff's impairments, "either singly or in combination, [were not severe enough to meet or equal], any of the listed impairments". R. at 20, 26. Moreover, the court notes that the statement that plaintiff attributes to the ALJ, allegedly made during the March 2, 2005, hearing, appears to be a statement from plaintiff's counsel, rather than the ALJ, regarding the plaintiff's prescription for nitroglycerin. R. at 52. The record

of this hearing shows that it was *counsel* who stated that "[The doctors] have prescribed nitroglycerin. So, obviously it's a credible complaint."

***Treating physician's opinion***

The plaintiff also argues that the ALJ erred in disregarding the statements of disability issued by plaintiff's treating physician, Dr. Gregory Eilers. Pursuant to 20 C.F.R. § 404.1527(e)(2), the Commissioner will "consider opinions from treating and examining sources on issues such as . . . your residual functional capacity . . . [although] the final responsibility for deciding these issues is reserved to the Commissioner." "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e)(1).

In general, the opinions of treating physicians are given substantial or considerable weight unless good cause is shown to the contrary. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Good cause has been found to exist "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal citations omitted). As the Lewis court noted, "[w]e are concerned here with the doctors' evaluations of [the plaintiff's] condition and the medical consequences thereof, not their opinions of the legal consequences of [her] condition." Id.

Herein, the ALJ noted the findings issued by Dr. Eilers but determined that

> Dr. Eilers, the claimant's treating physician . . . opined that the claimant was unable to work. In Exhibit 10F, Dr. Eilers stated that the claimant could perform less than sedentary exertion. Specifically, he could stand and sit continuously for only one hour

> and could not bend, squat, crawl, climb, balance, or stoop, and could only walk less than 100 feet. This assessment conflicts with the laboratory reports of the Medical Center. Dr. Levine testified that he disagreed with the treating physician's assessment in Exhibit 10F, for it is not supported by the objective medical records. I concur with Dr. Levine's assessment of Exhibit 10F and do not assign controlling weight to Dr. Eiler's assessment.

R. at 23.

A review of the medical opinions at issue and the objective medical record reveal that the ALJ's determination regarding Dr. Eilers' findings and conclusions is supported by substantial evidence. On November 20, 2003, Dr. Eilers submitted a residual functional capacity assessment, in which he concluded that plaintiff suffered from limitations that rendered him completely disabled, including an ability to lift only 5 pounds occasionally, the need to rest or lie down several times a day, and the ability to sit and stand for only one hour per day. In another "Medical Statement" issued by Dr. Eilers in December 2004, he concludes that the plaintiff is not physically capable of engaging in gainful employment. R. at 506. However, Dr. Eilers does not provide any specific medical findings, examination or treatment notes, or test results to support his conclusions. In May 2003, consultative examiner Dr. Von Hessler found that the plaintiff could stand, walk and sit for extend periods of time without difficulty, and that the plaintiff had full use of his arms and legs. The only limitation noted by Dr. Von Hessler was the plaintiff's heart condition and ejection fraction, which, as discussed above, improved significantly over the next several months. Furthermore, multiple state agency physicians reviewed the medical evidence of record during 2003 and concluded that the plaintiff was capable of performing medium exertional level work.

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable C. Ashley Royal, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 22nd day of February, 2008.

/s/ *Richard L. Hodge*
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE

asb